UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

RICHARD C. NEWHART,              )
                                )
            Plaintiff,           )
                                )
      v.                         )          CASE NO. 4:09-CV-46-JD
                                )
MICHAEL J. ASTRUE,               )
COMMISSIONER OF SOCIAL           )
SECURITY,                        )
                                )
            Defendant.           )

## OPINION AND ORDER

On January 19, 2006, Newhart filed applications for Social Security Disability Insurance

Benefits and Supplemental Security Income alleging that he became disabled on February 1,

1998.[1] Newhart's initial applications were denied on April 27, 2006 (Tr. 37), and his request for

reconsideration was denied on June 29, 2006 (Tr. 36).

On November 18, 2008, Newhart appeared with counsel and testified at a hearing before

Administrative Law Judge Peter Americanos ("ALJ") alleging disability due to familial

polyposis resulting in an ileostomy, arthritis, gout, cataracts, knee pain, and depression (Tr. 84-

85, 196-222).  On January 27, 2009, the ALJ determined that Newhart was not disabled under

the Social Security Act because he was able to perform his past relevant work, as well as a

significant number of other jobs in the national economy (Tr. 13-21).

_____

[1]The regulations governing the determination of disability for disability insurance
benefits are found at 20 C.F.R. § 404.1501 *et. seq.*, while the social security income regulations
are set forth at 20 C.F.R. § 416.901 *et. seq.*  Because the definition of disability and the
applicable five step process of evaluation are identical in all respects relevant to this case,
reference will only be made to the disability insurance benefits' regulations for purposes of
clarity.

The Appeals Council denied Newhart's request for review on May 14, 2009, making the decision of the ALJ the final decision of the Commissioner (Tr. 4-7). On June 15, 2009, Newhart filed his complaint in this Court, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), alleging that the ALJ's decision is not supported by substantial evidence and that the ALJ applied an erroneous standard of law.

## I. FACTS

Newhart was 56 years old at the time the ALJ delivered his decision (Tr. 19). Newhart has his GED (Tr. 89). He previously worked as a carpenter for approximately 15 years (from 1980-1995), performing very heavy, skilled work, and thereafter, worked 2 years as a car accessories installer, which generally involved light, semi-skilled work (Tr. 76, 216). He has not worked since 1997 and claims that he became disabled in February 1998 (Tr. 15). Newhart claims that his most serious problems are the pain in his knees and his need to take frequent restroom breaks on account of his ileostomy (Tr. 200-01).

## A.      Medical Evidence

Newhart alleges disability due to familial polyposis[2] and post status ileostomy[3] along with arthritis, gout, cataracts, knee pain, and depression (Tr. 137). He was diagnosed with gout

---

[2]Familial polyposis is an inherited disorder characterized by cancer of the large intestine and rectum. Multiple benign polyps begin to develop in the colon and will become malignant unless the colon is removed. Genetics Home Reference as a Service of the U.S. National Library of Medicine, http://ghr.nlm.nih.gov/condition/familial-adenomatous-polyposis (last visited Sept. 19, 2010).

[3]An ileostomy is a type of surgery to create a new opening in the abdomen. The colon and rectum are removed and the bottom of the small intestine is attached to the stoma. Medlineplus as a Service of the U.S. National Library of Medicine and National Institutes of Health, http://www.nlm.nih.gov/medlineplus/ostomy.html (last visited Sept. 19, 2010).

in 1996, depression in 1998, and familial polyposis in 2001 (Tr. 118).  In addition, Newhart had an ileostomy performed in 1981. *Id.*

Newhart underwent a mental status evaluation in February 2006.  Dr. Buonanno, a consultative psychiatrist, described Newhart as having variable moods without any suicidal thoughts, hallucinations, delusions, or psychosis (Tr. 138).  Newhart got along with others and usually completed tasks, unless bothered by severe gout. *Id.*  Dr. Buonanno diagnosed Newhart with depressive disorder and assigned him a Global Assessment of Functioning ("GAF") score[4] of 58[5] (Tr. 139).

Newhart also underwent a consultative examination for workers' compensation, during which he complained of diarrhea and abdominal pain due to his ileostomy (Tr. 118-19).  The physician, Dr. Newton, noted that the abdomen was soft and benign and that Newhart's bowels sounded normal. *Id.*  There was no enlargement of the liver, masses, or tenderness. *Id.*  Newhart's gait was normal and he showed no signs of joint swelling. *Id.*  Dr. Newton noted that Newhart did not appear to be in distress, he was able to get on and off the examination table without difficulty, and he was not using an assistive device. *Id.*  Although Newhart was unable to squat, he was able to bend over and get back up and walk on his heels and toes without

---

[4]The GAF scale reflects a clinician's judgment of an individual's overall level of functioning and ability to carry out activities of daily living. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed. text revision 2000) (*"DSM-IV"* ).  The GAF rating is determined by utilizing a 100-point scale to measure the overall level of psychological, social, and occupational functioning of the individual on a hypothetical continuum. *Id.*

[5]A GAF rating of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

difficulty. *Id.* His straight leg raising test was negative for pain, but he had pain upon palpation of his ankle and foot joints. *Id.* Dr. Newton's assessment of Newhart noted familial polyposis with ileostomy, gout, depression, impaired vision with possible cataracts, and degenerative disease in both knees and ankles (Tr. 120).

In early March 2006, Dr. Shipley, the State Agency medical consultant, conducted a psychiatric review of Newhart and concluded that while Newhart suffered from depressive disorder, it did not cause limitations with his activities of daily living, social functioning, or ability to maintain concentration, persistence, or pace, and it did not cause any episodes of decompensation (Tr. 122-35). Thus, Dr. Shipley concluded that Newhart did not suffer from an impairment that was severely limiting (Tr. 134).

In April 2006, State Agency medical consultant Dr. Bastnagel conducted a physical residual functional capacity ("RFC") assessment[6] of Newhart (Tr. 97-104). Dr. Bastnagel listed Newhart's primary diagnosis as "arthritis" and determined that Newhart was able to frequently lift 25 pounds and occasionally lift 50 pounds, and stand/walk or sit for a total of 6 hours in an 8 hour work day, including normal breaks (Tr. 97-98). Dr. Bastnagel noted that Newhart had pain and decreased range of motion in his knees and ankles, but that he could climb, stoop, kneel, crouch, and crawl frequently, but could never balance (Tr. 98-99). Newhart showed no signs of manipulative, visual, communicative, or environmental limitations (Tr. 100-01). Dr. Bastnagel found Newhart to be "partly credible" as to his alleged symptoms (Tr. 102).

Other medical records reveal that x-rays taken of Newhart's knees in late March 2006,

---

[6]"Residual Functional Capacity" is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545(a)(1).

proved unremarkable with small suprapatellar joint effusions (Tr. 106). As to his eyes, although Newhart complained in March 2006 that his vision was foggy at night and in the sun due to cataracts (Tr. 111), in February 2006, his vision with glasses was 20/40 in his right eye and 20/20 in his left eye (Tr. 119). In 2008, Newhart had cataract surgery on both eyes (Tr. 185). After establishing care at Tippecanoe County Health Clinic, Newhart had flare-ups of gout in January 2001, July through September 2006, and June 2007, and was also treated for fatigue, hypertension, high blood pressure, and high cholesterol (Tr. 141, 148-81, 190-95).

In addition to the medical evidence, in 2006, Newhart's daughter indicated that Newhart's pain, arthritis, and gout sometimes kept Newhart from mowing the lawn or driving (Tr. 62-72). Newhart's pain, depression, and complications with his ileostomy have caused him to change his daily activities, as he now watches a lot of television because he is unable to do more. *Id*. She further reported that sometimes Newhart's condition is so bad that he cannot get out of bed, can barely lift a gallon of milk, and must use crutches with a bad bout of gout or arthritis. *Id*. She believes that due to his pain, Newhart can no longer perform jobs that require him to frequently sit, stand, walk, kneel, or squat. *Id*.

**B.      Newhart's Testimony**

At his hearing before the ALJ, Newhart testified that he stopped working in 1997 due to the pain in his knees, because installing accessories on cars required him to be on them "working underneath dashes and stuff at the SIA car plant," and required him to lift up to 50 pounds and stand or walk 8 hours a day and frequently stoop, kneel, crouch, handle and reach (Tr. 77, 200-01). Newhart found it difficult to work with the ileostomy because it required him to "use the restroom too much," and his employer warned him of his overuse. *Id*. Although these health

issues affected his ability to work, Newhart acknowledged that he also stopped working because of legal problems that involved his son (Tr. 215). Newhart explained that he did not find another job because he "didn't know what else [he] could do" on account of his problems with gout in his knees and frequent restroom breaks (Tr. 215-16). Newhart admitted that his vision is fine since his cataract surgery was completed (Tr. 201-02).

Newhart has lived with and taken care of his mother since March 2007 (Tr. 199). He cooked, washed dishes, did the laundry, and cut the grass with a riding mower a little bit at a time (Tr. 211). In addition, Newhart visited with friends and his daughter around 4 times a week (Tr. 212). He mostly passed the time away by watching television (Tr. 212), and no longer hunted or fished (Tr. 202-03).

When Newhart described the events of his previous day, he said that he got up around 7:00 or 8:00 a.m. and ate breakfast (Tr. 205-06). He ran errands with his daughter and visited his grandson from about 10:00 to 1:30 (Tr. 206). He prepared lunch and then sat on the couch to relax and stretch his legs (Tr. 206). He noted that when he showered, he had trouble getting his foot over the edge of the tub (Tr. 210). But Newhart confirmed that it had been several months prior to the hearing since he had a significant problem with gout. *Id*.

Yet, Newhart stated that he had pain in his knees "all the time," that if he sat for too long it was "hard to get back up," and his knees bothered him if he stood for too long (Tr. 201). If Newhart goes shopping, he uses a cart to take the pressure off of his knees (Tr. 203). He estimated that he could lift up to 25 pounds, and could sit for 20 to 30 minutes without knee pain, and believed that he could probably stand between 20 and 30 minutes before needing to sit back down (Tr. 203, 205). Newhart also estimated that he could walk between 30 to 40 feet

before his knees would begin to hurt, however he could continue to walk past that point (Tr. 205). Newhart reported that sometimes while walking, his knee would give out and cause him to fall, however this only happened twice in an eleven month period (Tr. 207). He described difficulty with descending and climbing stairs, but added that his knees "don't hurt as bad" if he is able to stretch them out on the couch (Tr. 207, 213). When asked whether he could perform a job that would allow him to stand, sit, and walk around at will, with regular breaks, Newhart replied that he could not do so because it would be too painful to repeatedly sit and then stand (Tr. 212-13).

Due to the ileostomy, Newhart said that if it gets too full, he could not sit in a chair or bend over, and had to be careful not to bump into things (Tr. 208). He also had to be careful with leakage from the bag even if it was not full. *Id*. Newhart must empty his bag at least 3 or 4 times a day, and sometimes 8 times a day (Tr. 209). Also, it is possible for the bag to fill up in a matter of minutes (Tr. 213). Occasionally, Newhart has had to change clothes because of an accident (Tr. 209).

## C.   Vocational Expert's Testimony

The vocational expert, Mr. Burger, testified that Newhart's past work included being a carpenter, classified as very heavy, skilled work,[7] and a car accessories installer, considered light, semi-skilled work[8] (Tr. 216). Mr. Burger testified that the carpenter job included skills which

---

[7]"Very heavy work" is a classification referring to work that "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567(e).

[8]"Light work" describes work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

were transferable to skilled medium[9] work, such as knowledge of carpentry and its tools (Tr. 216-17).

When asked to identify jobs that could be performed by a hypothetical individual with Newhart's age, education, work experience, who could work at the medium exertion level and needed an additional unscheduled 5 minute break per day, Mr. Burger identified other skilled carpentry work, including a manufactured buildings carpenter (368 positions) and a mold carpenter (434 positions) (Tr. 217). Considering the same hypothetical, Mr. Burger announced that no semi-skilled medium work existed, but that such a hypothetical individual could perform several unskilled medium jobs, including a janitor or cleaner (41,168 positions), food preparation worker (6,019 positions), and busser (7,613 positions) (Tr. 218). And, at the unskilled light level, the individual could perform work that existed as a janitor or cleaner (4,518 positions), food preparation worker (6,265 positions), and stock and inventory clerk (1,975 positions). *Id.* Mr. Burger also testified that an individual with 2 additional unscheduled breaks could perform Newhart's past semi-skilled light work as a car accessories installer (Tr. 221).

Mr. Burger testified that 2 unscheduled 5 minute breaks would be tolerated, but 3 unscheduled breaks would "start becoming borderline" (Tr. 219-20). Four unscheduled 5 minute breaks would preclude work (Tr. 220).

**D.     ALJ's Decision**

The ALJ determined that Newhart met the insured status requirements of the Social

---

Jobs in this category require "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*.

[9]"Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

Security Act through December 31, 2002, and had not engaged in substantial gainful activity since February 1, 1998 (Tr. 15).  The ALJ decided that Newhart had severe impairments of familial polyposis and status post ileostomy (Tr. 15-17).  Considering Newhart's impairments, the ALJ found that Newhart did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17).

Newhart had his GED, spoke English, and was a younger individual from February 1998 until November 22, 2002 (Tr. 20), then became a person closely approaching advanced age, until he became a person of advanced age in November 2007 (Tr. 20).  The ALJ decided that Newhart had a RFC to perform medium work but would need 2 additional, unscheduled 5 minute breaks per day (Tr. 19).  Based on his RFC, Newhart could not perform his past work as a carpenter, but was able to perform his past work as a car accessory installer. *Id*.  The ALJ further concluded that Newhart could perform a significant number of jobs in the national economy given his age, education, work experience, and RFC (Tr. 20).

## II.  STANDARD OF REVIEW

The ruling made by the ALJ becomes the final decision of the Commissioner when the Appeals Council denies review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009).  In its review, the district court will affirm the Commissioner's finding of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Id.* Further, conclusions of law are not entitled to deference, so if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Generally, disability and supplemental insurance "[b]enefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social

Security regulations create a five step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v).  The steps are to be used in the following set order:

1. Whether the claimant is currently doing any substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can make an adjustment to other work.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Newhart's appeal focuses on the ALJ's determination of Newhart's RFC, ability to perform his past work, and ability to perform other work.  Newhart argues that the ALJ's ultimate conclusion that he was not disabled is erroneous because it is not supported by substantial evidence and the ALJ committed errors of law.

## A.  RFC Determination

Newhart contends that in determining his RFC, the ALJ failed to independently analyze the medical evidence and consider the full extent of the limitations that Newhart's problems cause. [DE 12 at 12-13].  The Commissioner responds that no medical records contradict the ALJ's opinion, and Newhart's self-assesment is not enough to establish disability. [DE 17 at 9].

Prior to making his RFC determination, at steps 2 and 3 the ALJ considered Newhart's medical problems with familial polyposis resulting in an ileostomy, arthritis, gout, cataracts, knee pain, and depression, to decide whether Newhart had severe impairments, and to determine

whether those impairments met or medically equaled one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (Tr. 15-17). The ALJ determined that Newhart had severe

impairments of familial polyposis and status post ileostomy, but that Newhart did not have an

impairment or combination of impairments that met one of the listings. Then, the ALJ properly

proceeded to the next step, which was to determine Newhart's RFC. *See Young*, 362 F.3d at

1000 (the ALJ must determine the claimant's residual functional capacity before performing

steps four or five).

Residual functional capacity is an assessment of the work-related activities a claimant is

able to perform on a regular and continued basis despite the limitations imposed by an

impairment or combination of impairments. *Id*.; 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1); SSR

96-8p. This finding must be assessed based on all the relevant evidence in the record, 20 C.F.R.

§ 404.1545(a)(1), must consider all medically determinable impairments even if not considered

"severe," 20 C.F.R. § 404.1545(a)(2), and must be supported by substantial evidence. *Clifford v.

Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

The law is also clear that an ALJ cannot disregard medical evidence simply because it is

at odds with the ALJ's own unqualified opinion. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir.

2007) (citations omitted). However, the ALJ may discount medical evidence as long as the ALJ

minimally articulates some justification for rejecting evidence of a disability. *Berger v. Astrue*,

516 F.3d 539, 545 (7th Cir. 2008); *see Murphy*, 496 F.3d at 634 (noting that the ALJ cannot

ignore evidence supporting a finding of disability, but must fully develop the record before

drawing any conclusions, and must adequately articulate his analysis so that the reviewing court

can follow his reasoning). The ALJ has final responsibility for deciding a claimant's residual

functional capacity, which is a legal decision rather than a medical one. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(e).

In calculating Newhart's RFC, the ALJ stated, "In making this [RFC] finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, . . . [and] I also considered opinion evidence" (Tr. 17-18). But the ALJ's decision does not reflect that he did what he said he did.

After concluding that Newhart's arthritis, knee pain, gout, cataracts, and depression were not "severe" impairments (Tr. 16-17), the ALJ eliminated these ailments from his evaluation of the RFC. The ALJ's RFC analysis focuses only on the familial polyposis and ileostomy (Tr. 18-19),[10] and there is no evidence that the ALJ ever considered Newhart's arthritis, gout, cataracts, knee pain, and depression[11] in making the RFC determination. In fact, it appears that the ALJ made a conscious decision to abandon from his analysis those impairments he concluded were not "severe," and in doing so, he failed to comply with 20 C.F.R. § 404.1545(a)(2). These non-severe medical impairments and/or their symptoms, while not mentioned in the RFC finding, were supported by medically acceptable clinical and diagnostic techniques and other evidence,

---

[10]The ALJ noted that Newhart's "severe impairments" would significantly limit his ability to perform basic work-related activities, and "specifically" Newhart's "abdominal surgery and current abdominal problems would preclude any heavy-lifting, although these would not significantly limit his ability to sit, stand and walk. In addition, his frequent bowel movements and need to empty his bag also would require that he be provided some additional unscheduled breaks to access the bathroom" (Tr. 18-19).

[11]Mental limitations must be part of the RFC assessment, because "[a] limited ability to carry out certain mental activities . . . may reduce [a claimant's] ability to do past work and other work." *Craft*, 539 F.3d at 676 (citing 20 C.F.R. § 404.1545(c)).

*see* 20 C.F.R. § 404.1529, and needed to be considered.

Had the ALJ discussed the evidence supporting Newhart's non-severe impairments and the limitations they cause, he may have noted the following information. Newhart's medical records show that he was diagnosed with gout in 1996, depression in 1998, and depressive disorder in 2006. The consultative psychiatrist assigned Newhart a GAF score of 58, indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Newhart's consultative physical examination in 2006 revealed that he was unable to squat, experienced pain in his ankle and foot joints, and his assessment noted that Newhart suffered from gout, depression, and degenerative disease in both knees and ankles. In April 2006, the state agent medical consultant listed Newhart's primary diagnosis as arthritis, noted that he could never balance, and indicated that he had pain and a decreased range of motion in his knees and ankles. X-rays of Newhart's knees revealed small suprapatellar joint effusions. Medical records also confirm Newhart's continuous problems with gout, as recent as 2007.[12]

In addition to the medical evidence, both Newhart and his daughter explained the significant limitations that Newhart's arthritis, gout, knee pain, and depression had on his activities of daily living and ability to work. According to them, there are days when Newhart can barely lift a gallon of milk, get out of bed, or drive. Yet, the ALJ omitted any such discussion of this relevant evidence, except to state (without explaining why), that he found "the

---

[12]More than once, the ALJ referenced the fact that Newhart's gout kept him from completing a task or performing certain daily activities (Tr. 16-17). Yet, this physical ailment was not discussed in making the RFC determination.

claimant's testimony on the issue of total disability to be not entirely credible" (Tr. 18). The ALJ did not evaluate the intensity, persistence, and limiting effects of Newhart's symptoms, including pain, as substantiated by the medical evidence or as deemed credible based on Newhart and his daughter's statements, as he was required to do. 20 C.F.R. § 404.1529. This was patently wrong. *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (in making a credibility finding the ALJ should consider elements such as the objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, functional limitations, treatment, and medication) (citing SSR 96-7p (instructing that when "evaluating the credibility of the individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements")). The ALJ failed to determine to what extent Newhart's alleged functional limitations and restrictions (due to pain and other symptoms), can reasonably be accepted as consistent with the medical signs and laboratory findings, in order to determine how his symptoms affect his ability to work. 20 C.F.R. § 404.1529.

While Newhart draws more attention to the ALJ's alleged misunderstanding of the limitations caused by his ileostomy, any misunderstanding can be clarified on remand, because the Court finds that the ALJ did not adequately address Newhart's non-severe limitations when deciding Newhart's RFC. The Court realizes that an ALJ need not discuss every piece of evidence in the record, so long as he builds a logical bridge from the evidence to his conclusion. *Denton v. Astrue*, 596 F.3d 419, 477 (7th Cir. 2010) (noting that the ALJ has an obligation to consider all relevant evidence and cannot cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding). In this case, because the

ALJ did not articulate his reasons for ignoring or rejecting relevant medical evidence, *see* SSR 96-8p, and did not articulate his reasons for discounting disability-supporting testimony, *see* SSR 96-7p, the Court cannot trace the path of the ALJ's reasoning. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (an ALJ's decision must be based upon consideration of all the relevant evidence and the ALJ must articulate at some minimal level his analysis of the evidence). Again, by abandoning from his determination the non-severe impairments, the ALJ violated the means by which the RFC analysis is to be conducted, and did so without articulating his reasons for why Newhart's non-severe impairments caused no limitations. As such, remand is appropriate.

**B.     Steps 4 and 5**

After making the RFC determination, the ALJ must decide what, if any, employment Newhart is capable of performing. 20 C.F.R. § 404.1520(f). If Newhart could not perform his past work, the question becomes whether he has the capability of performing other work in the national economy. *Tom v. Heckler*, 779 F.2d 1250, 1253 (7th Cir. 1985); 20 C.F.R. § 404.1520(g).

Because the ALJ did not properly calculate Newhart's RFC, the Court has no way of knowing if Newhart could actually perform the functional demands and job duties of his past occupations, either as actually performed or as generally required by employers throughout the national economy. *Orlando v. Heckler,* 776 F.2d 209, 215-16 (7th Cir. 1985) (citing SSR 82-61); *see Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008) (the ALJ need not conclude that the claimant is capable of returning to the precise job he used to have; it is enough that the claimant can perform jobs substantially like that one). In fact, the vocational expert testified that if

Newhart's RFC included posterial limitations (i.e. bending, crawling, kneeling, stooping, etc.) due to his symptoms, then he would be unable to perform his past work. Because there is insufficient evidence and explanation to conclude that Newhart is capable of performing his past work, the case must be remanded. *See* SSR 86-8 (noting that the decision as to whether the claimant retains the functional capacity to perform his past work "has far-reaching implications and should be developed and explained fully in the disability determination . . . [s]ince this is an important and, in some instances, a controlling issue, every effort should be made to secure evidence that resolves the issue clearly and explicitly.").

As to Newhart's ability to perform other work in the national economy, substantial evidence in the record must support such a finding. *Tom*, 779 F.2d at 1254. While the ALJ consulted a vocational counselor, the record does not indicate that the ALJ considered the aggregate effect of all of Newhart's ailments. *Clifford*, 227 F.3d at 873-74. The ALJ must properly assess Newhart's RFC, incorporating all of the relevant limitations from which he suffers, then determine whether he is capable of performing work. At the end of the day, the Commissioner bears the burden at step five, not Newhart, *Id.* at 868, and any hypothetical ultimately posed to a vocational expert "must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684-685 (7th Cir. 2009). Notably, this is not a case where the Court can impute knowledge of Newhart's limitations to the vocational expert, because the vocational expert only answered the particular hypotheticals posed to him by the ALJ, which did not include potential limitations caused by all of Newhart's impairments. *See Young*, 362 F.3d at 1003-05 ("When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust

to other work in the economy cannot stand.").

In light of the ALJ's erroneous residual functional capacity determination, the ALJ's determination that Newhart is not disabled is the result of legal error and is not supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The record does not command a determination that Newhart should be awarded benefits, but the ALJ has not adequately supported his conclusions.

## IV.  CONCLUSION

For the foregoing reasons, the Court REVERSES the final decision of the Commissioner of Social Security, and REMANDS the case for a hearing consistent with this opinion.

SO ORDERED.

ENTERED: September 27, 2010

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court